Filed 1/26/23

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| AISHA DARBY,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>SISYPHIAN, LLC,<br><br>  Defendant and Appellant. | B314968<br><br>(Los Angeles County<br>Super. Ct. No. BC691081) |

  APPEAL from a judgment of the Superior Court of Los Angeles County, Michael L. Stern, Judge.  Affirmed.

  Law Offices of Jeffrey M. Cohon, Jeffrey M. Cohon, and Kristina S. Keller for Defendant and Appellant.

---

*  Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication as to all parts except Part II of the Discussion.

Mouton Law and Stacey Y. Mouton; Law Firm of Clifford H. Young and Clifford H. Young for Plaintiff and Respondent.

\* \* \* \* \* \*

Under the California Arbitration Act (Code Civ. Proc., § 1280 et seq.) (the Act),[1] a party seeking to vacate or correct an arbitration award must do so prior to the expiration of the Act's statutory deadlines (§§ 1288.2, 1290.6). Sometimes, the party seeking such relief misses those deadlines. If another party to the arbitration has filed a competing petition to confirm that award, is the trial court allowed to consider any of the objections to confirmation raised in untimely filings seeking to vacate or correct the award? And if the judgment confirming the award is appealed, may the party who untimely sought to vacate or correct the award renew on appeal their challenges to the award's confirmation? We conclude that the answer to both questions is "no." Because well-settled law dictates the finding that the appealing party in this case did not meet the Act's deadlines for vacating or correcting the arbitration award, we affirm the judgment confirming that arbitration award and grant the prevailing party her attorney fees on appeal.

## FACTS AND PROCEDURAL BACKGROUND

### I.  Plaintiff Signs an Employment Contract

Between June 2016 and May 2017, Aisha Darby (plaintiff) worked as an exotic dancer at the Xposed Gentlemen's Club in Canoga Park, California ("the club"). In her "Entertainment Agreement," plaintiff agreed to arbitrate "any controversy,

---

1      All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

dispute, or claim . . . arising out of this agreement." At that time, the club was owned and operated by Sisyphian, LLC (Sisyphian).

## II. Plaintiff Initiates Litigation

In January 2018, plaintiff sued Sisyphian for (1) failure to pay minimum wage (in violation of Labor Code sections 1194, 1194.2, 1197 and 1197.1), (2) failure to pay overtime wages (in violation of Labor Code sections 226.7 and 512), (3) failure to pay wages for missed meal periods (in violation of Labor Code section 512), (4) failure to pay wages for missed rest breaks (in violation of Labor Code sections 512 and 1194), (5) waiting time penalties (in violation of Labor Code sections 202 and 203), (6) failure to provide accurate wage statements (in violation of Labor Code sections 223, 1194, 1194.2, and 1197), and (7) unfair competition.[2]

Plaintiff's complaint alleged the relief she sought—which included attorney fees—in three different places for each of the above-listed claims: (1) in the section describing each claim, and (2) two times in the complaint's "prayer" section, once in a subsection of the "prayer" corresponding with each claim and a second time under a catch-all subsection called "As To All Causes of Action."

---

[2] Plaintiff also asserted a cause of action for conversion, which the arbitrator dismissed.

Plaintiff additionally sued Brad Barnes on the ground that Sisyphian was his "alter ego." The arbitrator rejected that claim and awarded Barnes $1,037.50 in costs. Although Barnes is named on the notice of appeal in this case, he has made no separate appearance and no argument is offered attacking any ruling with regard to Barnes.

## III.    The Matter Is Arbitrated

In reliance on the arbitration clause in the Entertainment Agreement, the trial court in May 2018 granted Sisyphian's motion to compel arbitration of plaintiff's claims.

### A.    *First interim arbitration award (on liability)*

#### 1.    *Motion to strike*

In September 2018, Sisyphian moved to strike four discrete portions of plaintiff's complaint, and specifically sought to strike the allegations requesting attorney fees listed in the section describing the unfair competition claim, in the subsection of the "prayer" corresponding to that claim, and in the subsection listing the relief sought "As To All Causes of Action."  The arbitrator granted the motion to strike those allegations, including those in the catch-all "As To All Causes of Action" section because plaintiff, in her opposition, "ma[de] no effort to defend" them.

#### 2.    *Hearing on the merits*

After three days of hearings in October 2019 as well as fulsome briefing, the arbitrator issued an "interim arbitration award."  The arbitrator ruled that plaintiff was an "employee" (rather than an independent contractor) of Sisyphian; that Sisyphian had not complied with its duties under the Labor Code to pay her the minimum wage and overtime wages, to give her rest and meal breaks, and to provide her accurate wage statements; and that Sisyphian owed her $23,347.25 in damages and penalties for its noncompliance.  However, the arbitrator declined to award plaintiff the nearly $40,000 she sought as alleged customer gratuities or any restitution.  The interim

4

award invited the parties to file motions seeking attorney fees and costs.[3]

### B. *Attorney fees order*

#### 1. *Initial briefing and initial attorney fees order*

Because plaintiff did not prevail on *all* of her claims, plaintiff and Sisyphian filed competing motions for attorney fees and costs. After more fulsome briefing, the arbitrator in September 2020 issued an order denying both requests for attorney fees and costs. As pertinent here, the arbitrator cited two reasons for denying plaintiff's request for attorney fees: (1) the arbitrator accepted Sisyphian's representation—to which plaintiff did not respond in her reply brief—that plaintiff's requests for attorney fees in her complaint had been stricken *in their entirety*, and (2) the arbitrator found that plaintiff had made no attempt to apportion her attorney fees between the claims on which she had prevailed and those on which she had not. The arbitrator asked Sisyphian to prepare a final arbitration award.

#### 2. *Plaintiff seeks reconsideration*

Eight days after the arbitrator issued the initial attorney fee order, plaintiff filed a motion asking him to use his "inherent authority" to reconsider the order on the ground that Sisyphian's representation that *all* attorney fees allegations had been stricken from her complaint was inaccurate.[4] After considering

---

[3] Sisyphian filed a motion to correct the first interim award, which the arbitrator denied except as to clerical errors. Sisyphian does not attack that ruling on appeal.

[4] Plaintiff's motion also accused the arbitrator of "misinterpret[ing] or conveniently forget[ting]" the terms of the order striking portions of her complaint, condescendingly offered to "refresh [the arbitrator's] memory," implied that the arbitrator

5

further briefing, the arbitrator granted plaintiff's motion, citing Sisyphian's inaccurate representations and plaintiff's lassitude in not pointing out the inaccuracy. Specifically, the arbitrator found that his prior order striking allegations in plaintiff's complaint had not stricken the attorney fees allegations from the sections describing each Labor Code claim or from the "prayer" subsection corresponding with each claim. Thus, the arbitrator concluded, plaintiff's complaint still contained a viable prayer for attorney fees for the claims on which she prevailed. The court then ordered "[a]n entirely new round of briefing."

### 3. *The new round of briefing and revised attorney fee order*

As the arbitrator requested, the parties filed a new round of briefing. Although plaintiff's renewed motion neglected to address the issue of apportionment that had supported the arbitrator's prior order completely denying attorney fees, the arbitrator issued a revised order that awarded plaintiff $82,800 in attorney fees (out of the $283,941.25 she sought).

### C. *The final arbitration award*

On March 5, 2021, the arbitrator issued his "final arbitration award."

---

did not "take its promises to act neutrally seriously," and asserted that "[i]t [was] hard to assume anything other than bias" against her by the arbitrator. Apart from exhibiting Herculean levels of hubris for lambasting the arbitrator for not remembering details of an 11-month-old order that plaintiff elected not to address in her briefing, the tone exhibited in that motion was discourteous and disrespectful to a degree that transgresses the standards lawyers should exhibit toward the arbiter of any tribunal in which they appear.

6

## III.  Postarbitration Judicial Proceedings

On March 24, 2021, plaintiff filed in the trial court a petition to confirm the final arbitration award.  Plaintiff served the petition on Sisyphian, via e-mail, on April 1, 2021.

On May 3, 2021, Sisyphian filed and served two documents—namely, (1) a response to plaintiff's petition to confirm, and (2) a petition to vacate or correct the award.  In each of the nearly identical filings, Sisyphian argued that the arbitrator had exceeded his powers by reconsidering his initial attorney fees award, so the final award giving plaintiff $82,800 in such fees had to be vacated.

After further briefing and a hearing, the trial court issued a ruling (1) denying Sisyphian's petition to vacate or correct the award, and (2) confirming the award.  In its order, the trial court explicitly found that Sisyphian's "papers" were not "timely" because they missed the statutory deadline.  Without making any finding that Sisyphian had "good cause" to excuse its untimely filings, the court nevertheless went on to explain why, on the merits, "the result [of its order] would be the same" "[e]ven if [Sisyphian's] papers were timely"; specifically, the court found no merit to Sisyphian's argument that the arbitrator made an error of fact or law that exceeded his powers.

## V.  *Appeal*

Following the entry of judgment for plaintiff in the amount of $105,109.75,[5] Sisyphian timely filed this appeal.

---

[5]     This amount was calculated as the sum of the amounts Sisyphian owed plaintiff ($23,347.25 in damages and $82,800 in attorney's fees) less what plaintiff owed Barnes for his costs ($1,037.50).

7

# DISCUSSION

## I. Sisyphian's Challenge to the Final Arbitration Award

Sisyphian argues that the trial court erred in confirming the final arbitration award because, in reconsidering its initial attorney fees order, the arbitrator exceeded his powers. Whether we may consider this argument on the merits turns on two questions: (1) Were Sisyphian's challenges seeking to vacate or correct the final arbitration award timely filed, and (2) if they were untimely, may the trial court or this court consider those challenges—or is the trial court obligated to confirm the award and are we obligated to affirm? These questions turn on our interpretation of the Act as well as the application of the Act to undisputed facts; consequently, our review is de novo.[6] (*Guardianship of Saul H.* (2022) 13 Cal.5th 827, 846-847; *Lopez v. Ledesma* (2022) 12 Cal.5th 848, 857.)

### A. *Were Sisyphian's efforts to vacate or correct the final arbitration award timely?*

Once an arbitrator issues an "award" within the meaning of the Act, the "torch of jurisdiction" passes "from the arbitrator to the trial court." (§ 1283.4 [defining "award"]; *Lonky v. Patel* (2020) 51 Cal.App.5th 831, 843 (*Lonky*).)

Once that torch has passed, the parties to the arbitration can petition the trial court to issue one of two orders with regard

---

[6] That the arbitration provision in the Entertainment Agreement states that the final award is subject to review under the Federal Arbitration Act does not affect our analysis because the procedural provisions of the California Arbitration Act apply in these state court proceedings. (*Rodriguez v. American Technologies, Inc.* (2006) 136 Cal.App.4th 1110, 1120; *Valencia v. Smyth* (2010) 185 Cal.App.4th 153, 174.)

to the arbitration award: (1) an order *confirming* the arbitration award (§ 1285), which converts the arbitrator's unchanged award into an enforceable judgment (§ 1287.4; *Caro v. Smith* (1997) 59 Cal.App.4th 725, 737), or (2) an order *vacating or correcting* the arbitration award (§§ 1285, 1285.2, 1285.8), which alters the award's substantive findings and may be issued only upon one of the six bases for vacating an award set forth in section 1286.2 or one of the three bases for correcting an award set forth in section 1286.6.

The Act explicitly prescribes deadlines for filing either type of petition. The deadline for filing a petition to *confirm* an arbitration award is four years (from the date the petitioner was served with the award). (§ 1288.) The deadline for seeking to *vacate or correct* an arbitration award is less straightforward because the Act prescribes two ways to seek an order vacating or correcting an award, each with its own deadline. A party may seek an order vacating or correcting an award *in a standalone petition* (§ 1285), and the default deadline for filing such a petition is 100 days (from the date the petitioner was served with the award). (§§ 1288, 1288.2.) A party may also seek an order vacating or correcting an award *in its response to a prior-filed petition to confirm that award* (§ 1285.2), and the default deadline for filing that response is 10 days (from the date the responding party is served with the petition to confirm). (§ 1290.6.)

How do these two deadlines interact?

When no petition to confirm the award is filed, the deadline is easy—namely, 100 days after the award was served on the party petitioning to vacate or correct the award.

9

But when a petition to confirm is filed, the question becomes *which* deadline controls—the absolute deadline of 100 days after the award is served, or the relative deadline of 10 days after a petition to confirm the award is served? The answer is: Whichever deadline is the *shorter*. If a petition to confirm the award is filed fewer than 90 days after an award is served, a competing request to vacate or correct the award—whether styled as a response to the petition to confirm or as a standalone petition[7]—must be filed and served within 10 days of service of the petition to confirm, *even if that due date is less than 100 days after service of the award.* (*Law Finance Group, LLC v. Key* (2021) 67 Cal.App.5th 307, 319 (*Law Finance*), review granted Nov. 10, 2021, S270798; *Rivera v. Shivers* (2020) 54 Cal.App.5th 82, 93-94; *Coordinated Construction, Inc. v. Canoga Big "A," Inc.* (1965) 238 Cal.App.2d 313, 317; *Oaktree Capital Management, L.P. v. Bernard* (2010) 182 Cal.App.4th 60, 66-68.) But if a petition to confirm is filed more than 90 days after an award is served, a competing request to vacate or correct the award—no matter how styled—must still have been filed within 100 days of the service of the award, *even if that due date is less than 10 days*

---

[7] Sisyphian invites us to draw a distinction between filings styled as responses (which would be subject to the Act's 10-day deadline) and filings styled as standalone petitions (which would be subject solely to the Act's 100-day deadline and could ignore the 10-day deadline). We decline this invitation, as it would elevate form over substance, would effectively negate the 10-day deadline since any party who missed the 10-day deadline could simply restyle their untimely response as a standalone petition, and would be inconsistent with the Act's policy to decide postarbitration petitions "expeditious[ly]." (*Knass v. Blue Cross of California* (1991) 228 Cal.App.3d 390, 399 (*Knass*).)

10

*after service of the petition to confirm.* (*Douglass v. Serenivision, Inc.* (2018) 20 Cal.App.5th 376, 384-385.)

Are these deadlines subject to extension? It depends. Both the 100-day and 10-day statutory deadlines are "jurisdictional" (*Santa Monica College Faculty Assn. v. Santa Monica Community College Dist.* (2015) 243 Cal.App.4th 538, 544-545; *Abers v. Rohrs* (2013) 217 Cal.App.4th 1199, 1203), so neither may be extended via equity-based motions such as motions to vacate under section 473. (*Abers*, at pp. 1211-1212.) We disagree with cases that have dicta to the contrary. (E.g., *DeMello v. Souza* (1973) 36 Cal.App.3d 79, 85-86 (*DeMello*) [as to both deadlines]; *Eternity Investments, Inc. v. Brown* (2007) 151 Cal.App.4th 739, 746 (*Eternity*) [as to 100-day deadline].) The 100-day deadline is otherwise immovable, as the statute setting that deadline brooks no exceptions. (§ 1288.) The 10-day deadline, however, is a little more flexible, as the Act itself authorizes an extension of the 10-day deadline in two situations—namely, (1) when "the parties to the court proceeding" "agree[] in writing" to an extension, or (2) when the court, either explicitly or implicitly, finds "good cause" to extend the deadline *and* where such an extension would not unduly prejudice the other party (§ 1290.6; *Correia v. NB Baker Electric, Inc.* (2019) 32 Cal.App.5th 602, 613; *Ruiz v. Moss Bros. Auto Group, Inc.* (2014) 232 Cal.App.4th 836, 847; *MJM, Inc. v. Tootoo* (1985) 173 Cal.App.3d 598, 603; *Travelers Indemnity Co. v. Bell* (1963) 213 Cal.App.2d 541, 544-545).[8]

---

[8] Indeed, the Legislature's decision to create an express, equity-based "good cause" standard for the 10-day deadline but not the 100-day deadline would seem to rebut the usual presumption that jurisdictional deadlines are subject to equitable

11

Applying these deadlines, Sisyphian's standalone petition and its response to plaintiff's petition to confirm were untimely. Plaintiff's petition to confirm the arbitration award was served on Sisyphian on April 1, 2021. Under the above-stated rules, Sisyphian had 10 days to ask the trial court to vacate or correct that award. But Sisyphian waited 32 days—until May 3, 2021—to file its standalone petition and its response to plaintiff's petition. These filings were untimely. Neither statutory exception to the 10-day deadline was invoked here. The parties did not agree to extend the deadline. The trial court also did not find "good cause" to extend the deadline; instead, the court found that Sisyphian's filings had been "untimely."

Sisyphian's sole response is to object that it has been caught in a "procedural gotcha," citing *People v. Matthews* (2019) 32 Cal.App.5th 792, 798 and *Clark v. Superior Court* (2021) 62 Cal.App.5th 289, 293. But a party's failure to follow a statutory deadline that has been interpreted consistently for years by the courts does not amount to an unfair "gotcha." What is more, neither *Matthews* nor *Clark* has anything to do with the Act's deadlines or otherwise sanctions ignoring statutory deadlines of jurisdictional import.

---

tolling. (See *Saint Francis Memorial Hospital v. State Dept. of Public Health* (2020) 9 Cal.5th 710, 719-720.) However, even if we assume it existed as a doctrine, equitable tolling applies only if there is a showing of reasonable and good faith conduct by the party seeking tolling (*id.* at p. 724), and Sisyphian has proffered no reason why its late filings should be excused. Because equitable tolling does not matter to this case, the pendency of the issue before our Supreme Court in *Law Finance* is of no consequence.

**B.** ***What are the consequences for missing the Act's filing deadlines when seeking to correct or vacate an arbitration award?***

    1. *In the trial court*

A petition to confirm an arbitration award, if procedurally proper, "shall" be confirmed unless the trial court (1) vacates or corrects the award, or (2) dismisses the petition to confirm. (§ 1286.) A petition to confirm is procedurally proper as long as it (1) sets forth a copy of the agreement to arbitrate, the names of the arbitrator(s), and a copy of the arbitration award (§ 1285.4; *Eternity*, *supra*, 151 Cal.App.4th at p. 745), and (2) is timely filed (which, as noted above, means it must be filed within four years of service of the award on the petitioner). Dismissal of a petition to confirm is appropriate if the petition to confirm is procedurally improper under the Act, if the trial court erred in compelling arbitration in the first place, or if the petition is subject to dismissal on "'any procedural basis'" that would "'justify dismissal of any other civil action.'" (§ 1287.2 [dismissal appropriate "if the [trial] court determines that [the party seeking dismissal] was not bound by the arbitration award and was not a party to the arbitration"]; *Maplebear, Inc. v. Busick* (2018) 26 Cal.App.5th 394, 399-400; *Law Offices of David S. Karton v. Segreto* (2009) 176 Cal.App.4th 1, 8, fn. 12 (*Segreto*).) In other words, dismissal is warranted if there is a defect with the petition to confirm or with the underlying order compelling arbitration itself. (Accord, *Maaso v. Signer* (2012) 203 Cal.App.4th 362, 370 [time limits applicable to petitions to vacate or correct do not apply where party, in effect, is challenging an

13

earlier trial court order remanding matter for rearbitration rather than the substance of the award itself].)[9]

Where, as here, the petition to confirm is procedurally proper, dismissal of that petition is not sought, and there is no timely filing seeking to vacate or correct the arbitration award, is the trial court *obligated* to confirm the arbitration award? The answer is "yes."

This answer is dictated by two principles.

First, a court may not vacate or correct an arbitration award unless "[a] petition or response requesting that the award be corrected" or "vacated has been duly served and filed." (§ 1286.8, subds. (a) & (b); *DeMello*, *supra*, 36 Cal.App.3d at p. 84; *Eternity*, *supra*, 151 Cal.App.4th at p. 745; *United Firefighters of Los Angeles v. City of Los Angeles* (1991) 231 Cal.App.3d 1576, 1581.)

Second, in the *absence* of a properly served and filed petition or response seeking to vacate or correct an award, a trial court "shall" confirm the award. (§ 1286; *Eternity*, *supra*, 151 Cal.App.4th at p. 745 ["confirmation of an award is the mandatory outcome *absent* the correction or vacatur of the award or the dismissal of the petition"]; *Louise Gardens of Encino Homeowners' Assn., Inc. v. Truck Ins. Exchange, Inc.* (2000) 82 Cal.App.4th 648, 660 (*Louise Gardens*) ["if a court does not vacate or correct an award (or dismiss the proceeding), it must confirm it"]; *Segreto*, *supra*, 176 Cal.App.4th at pp. 8-9 [same]; *Tutti Mangia Italian Grill, Inc. v. American Textile Maintenance Co.*

---

[9]     If a petition to confirm is dismissed, the unconfirmed award functions as a contract between the parties to the arbitration (rather than as a judgment). (§ 1287.6.)

14

(2011) 197 Cal.App.4th 733, 741-742 [same]; *Law Finance, supra*, 67 Cal.App.5th at p. 325 [same].) Put differently, vacating or correcting an arbitration award is the flip side of the same coin as confirming that award: If it isn't heads, it has to be tails; if an award cannot be vacated or corrected, it must be confirmed.[10] This is the outcome dictated by the plain text of section 1286, by the solid wall of precedent cited above, by the fact that "the allegations of a petition are deemed to be admitted" if no response "is duly served and filed" (§ 1290), and by the policy behind the Act, which views the postarbitration litigation in the trial court as a mere coda to the main score of dispute resolution in the arbitral forum—and a coda that is meant to be "expeditious." (*Knass, supra*, 228 Cal.App.3d at p. 399 ["Arbitration is designed to provide expeditious resolution of disputes"]; *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 10 ["The arbitrator's decision should be the end, not the beginning, of this dispute," such that "judicial intervention in the arbitration process [should] be minimized"].)

Because plaintiff's petition to confirm was procedurally proper, because no party sought dismissal of plaintiff's petition,

---

[10] The inverse is not also true, however: The absence of a properly filed petition to confirm an arbitration award does *not* obligate a trial court to vacate or correct that award. That is because the party seeking to vacate or correct an award bears the burden of proving one of the various grounds for vacation or correction. (§§ 1286.2, 1286.6.) The absence of a competing petition to confirm admits at most the factual allegations in support of the petition to vacate or correct; it does not admit the legal conclusions necessary to justify vacation or correction. (*Taheri Law Group, A.P.C. v. Sorokurs* (2009) 176 Cal.App.4th 956, 960-965; see also § 1290.)

15

and because Sisyphian's filings seeking to vacate or correct the arbitration award were not timely filed, the trial court in this case was obligated to confirm the final arbitration award. The trial court's observations in the alternative rejecting Sisyphian's arguments were superfluous to its ruling and could not have altered the outcome of the proceedings before that court.

2. *In the appellate court*

Although we have appellate jurisdiction because Sisyphian has appealed the "judgment" confirming the arbitration award (§ 1294, subd. (d)), Sisyphian's failure to timely file a petition or response seeking to vacate or correct that award before the trial court deprives us of the ability to consider its arguments on appeal seeking to vacate or correct that award.[11] There are two reasons for this rule. First, this rule preserves the integrity of the Act's statutory deadlines by preventing parties from circumventing them. A party who has missed the Act's carefully crafted deadlines has sacrificed its right to seek to vacate or correct the arbitration award before the trial court; were *we* permitted to consider the arguments in support of vacating or correcting the award on appeal, we would empower parties to resurrect that right by the simple expedient of appealing from the judgment confirming the award. (*Knass*, *supra*, 228 Cal.App.3d at pp. 395-396 ["An appeal of the judgment confirming the award

_____

[11] Even if no timely petition to vacate or correct an arbitration award had been filed before the trial court, an appellate court may still consider the merits of arguments that would support *dismissal* of the petition seeking confirmation, such as on the ground that arbitration should never have been compelled in the first place. (E.g., *Peleg v. Neiman Marcus Group, Inc.* (2012) 204 Cal.App.4th 1425, 1437-1438; *Giorgianni v. Crowley* (2011) 197 Cal.App.4th 1462, 1471.)

16

may not be used to circumvent the prescribed time allowed to petition for vacation or correction of an award"]; *Berg v. Traylor* (2007) 148 Cal.App.4th 809, 823 ["[party's] failure to file a timely petition to vacate the arbitration award bars her from challenging the judgment confirming the award on appeal"]; *Soni v. SimpleLayers, Inc.* (2019) 42 Cal.App.5th 1071, 1092-1094 [appellant "is barred from opposing confirmation of the award" "because [appellant] did not file a petition or response . . . within 100 days of service of the award"]; *Louise Gardens*, *supra*, 82 Cal.App.4th at p. 658 [appellant "cannot avoid the consequences of its failure to file a timely petition to vacate by appealing from the postconfirmation judgment"]; *Gordon v. G.R.O.U.P., Inc.* (1996) 49 Cal.App.4th 998, 1010 ["Statutory grounds for correction of an arbitrator's award cannot be asserted for the first time on appeal from the judgment confirming the award"].) Second, were we to sanction this power to resurrect, we would be creating a blueprint for prolonging postarbitration litigation in derogation of the Act's purpose of minimizing—not maximizing—such litigation.

Because Sisyphian forfeited its right to seek to vacate or correct the final arbitration award before the trial court, we may not consider its arguments to do so on appeal. We are accordingly obligated to affirm the judgment confirming the final arbitration award.

## II.  Attorney Fees on Appeal

Plaintiff argues that she is entitled to recover the attorney fees she incurred in this appeal.

Although parties in California are required to bear their own attorney fees unless a statute or contract provides otherwise (§ 1021; *Tract 19051 Homeowners Assn. v. Kemp* (2015) 60

17

Cal.4th 1135, 1142), plaintiff here prevailed in arbitration on her Labor Code claims seeking payments for violations of the minimum wage and overtime statutes as well as violations of the accurate wage statement statute. The Labor Code statutes authorizing those payments also provide for the "employee" to recover her "reasonable attorney's fees." (Lab. Code, §§ 1194, subd. (a) [so authorizing, for violations of the minimum wage and overtime laws], 226, subd. (e)(1) [so authorizing, for violations of the accurate wage statement law].) Because it is "beyond question" that a party's entitlement to attorney fees includes those incurred on appeal as well as before the trial court (*Harbour Landing-Dolfann, Ltd. v. Anderson* (1996) 48 Cal.App.4th 260, 263; *Morcos v. Board of Retirement* (1990) 51 Cal.3d 924, 927; *Villinger/Nicholls Development Co. v. Meleyco* (1995) 31 Cal.App.4th 321, 329), plaintiff is entitled to the attorney fees she incurred in this appeal defending the judgment awarding her relief for the overtime, minimum wage, and accurate wage statement violations.

Sisyphian resists this conclusion, pointing out that the Labor Code does not authorize an award of reasonable attorney fees for violation of the meal and rest break laws. This is both true and irrelevant. It is true because attorney fees are not available for violations of the Labor Code's meal and rest break provisions. (*Kirby v. Immoos Fire Protection, Inc.* (2012) 53 Cal.4th 1244, 1248, 1251.) It is irrelevant because, as noted above, attorney fees *are* available for violations of its overtime, minimum wage, and accurate wage statement provisions; because plaintiff incurred attorney fees on appeal defending the judgment confirming the arbitration award that rested on violations of the overtime, minimum wage, and accurate wage

18

statement provisions; and because the violations of those provisions were due to her working nearly 100 hours per week rather than mere restatements of violations of the meal and rest break provisions.

In light of our conclusion that plaintiff is entitled to her attorney fees on appeal pursuant to the Labor Code, we need not address whether plaintiff is also entitled to recover attorney fees under the Entertainment Agreement.

## DISPOSITION

The judgment is affirmed. Plaintiff is entitled to her costs and reasonable attorney fees incurred in this appeal, in an amount to be determined by the trial court.

## **CERTIFIED FOR PARTIAL PUBLICATION**.


_____, J.
HOFFSTADT


We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.
CHAVEZ